## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | |
|---|---|
| THOMAS W. LUCZAK, Individually and On Behalf of All Others Similarly Situated, | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | |
| vs. | |
| NATIONAL BEVERAGE CORP., NICK A. CAPORELLA, and GEORGE R. BRACKEN, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Thomas W. Luczak ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding National Beverage Corp. ("National Beverage" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired National Beverage securities between

July 17, 2014 through July 3, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      National Beverage, through its subsidiaries, develops, produces, markets, and sells a portfolio of flavored beverage products in North America and internationally. The Company offers beverages to the active and health-conscious consumers, including sparkling waters under the LaCroix, LaCroix Cúrate, LaCroix NiCola, and Shasta Sparkling Water brand names.  It serves retailers, as well as various up-and-down-the-street accounts through the take-home, convenience, and food-service distribution channels.  The Company sells and markets its products through an internal sales force, as well as specialized broker networks.

3.      National Beverage was founded in 1985 and is based in Fort Lauderdale, Florida. National Beverage is a subsidiary of IBS Partners, Ltd.  Its stock trades on the NASDAQ under the ticker symbol "FIZZ".

4.      On May 4, 2017, National Beverage issued a press release stating that it "employs methods that no other company does in this area—VPO (velocity per outlet) and VPC (velocity per capita)."  National Beverage asserted that it "utilize[s] two proprietary techniques to magnify these measure and this creates growth never before thought possible."  On May 5, 2017, National Beverage issued a second press release, stating that "[o]ur impressive VPO calculator . . . is flashing solid green numbers as we bring FY2017 to a close."

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) National

2

Beverage's sales claims and the supposed underlying "proprietary techniques" lacked a verifiable basis; (ii) National Beverage's Chairman and Chief Executive Officer ("CEO"), Defendant Nick A. Caporella ("Caporella") engaged in a pattern of sexual misconduct between 2014 and 2016; and (iii) as a result, National Beverage's public statements were materially false and misleading at all relevant times.

6.      On December 8, 2017, National Beverage issued a press release announcing its financial and operating results for the period ended October 28, 2017.  Notwithstanding the Company's representations in its May 2017 press releases with respect to "creat[ing] growth never before thought possible," analyst Laurent Grandet of Credit Suisse assigned an "underperform" rating to the Company's stock.  Grandet noted that National Beverage's business was driven "almost entirely" by the success of its LaCroix sparkling water brand, the growth trajectory of which was in fact slowing.  That same day, Maxim analyst Anthony Vendetti reiterated a "sell" recommendation for National Beverage stock, noting that its "numerous weak brands and opaque financial reporting" made its sale "highly unlikely."

7.      On this news, National Beverage's share price fell $11.91, or 10.56%, to close at $100.84 on December 8, 2017.

8.      On June 26, 2018, the *Wall Street Journal* published an article entitled "The SEC Has Had Its Own Questions About LaCroix", reporting that National Beverage had "declined to provide" the SEC "with requested sales figures to clarify [National Beverage's] sales claims", following a letter request from the SEC in January 2018.

9.      On this news, National Beverage's share price fell $9.75, or 8.87%, to close at $100.19 on June 27, 2018.

3

10.     Then, on July 3, 2018, the *Wall Street Journal* published an article entitled "Billionaire Behind LaCroix Accused of Improper Touching by Two Pilots."  The article reported, in part, that "[t]wo pilots have filed lawsuits alleging sexual harassment . . . claiming 82-year-old Nick A. Caporella inappropriately touched them on multiple trips while they were flying with him in the cockpit of his business jet" and that "[t]he suits claim the unwanted touching occurred on more than 30 trips from 2014 to 2016.

11.     On this news, National Beverage's share price fell $2.90, or 2.64%, over the following two trading days, closing at $107.04 on July 6, 2018.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as National Beverage's principal executive offices are located within this Judicial District.

16.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired National Beverage's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant National Beverage is headquartered in Fort Lauderdale, Florida, with principal executive offices located at 8100 SW Tenth Street, Suite 4000, Fort Lauderdale, Florida 33324.  National Beverage's securities trade on the NASDAQ under the ticker symbol "FIZZ."

19.     Defendant Caporella has served at all relevant times as the Company's CEO and Chairman.

20.     Defendant George R. Bracken ("Bracken") has served at all relevant times as the Company's Executive Vice President of Finance.

21.     The Defendants referenced above in ¶¶ 19-20 are sometimes referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of National Beverage's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being

made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

**SUBSTANTIVE ALLEGATIONS**

**Background**

23.     National Beverage, through its subsidiaries, develops, produces, markets, and sells a portfolio of flavored beverage products in North America and internationally.  The Company offers beverages to the active and health-conscious consumers, including sparkling waters under the LaCroix, LaCroix Cúrate, LaCroix NiCola, and Shasta Sparkling Water brand names.  It serves retailers, as well as various up-and-down-the-street accounts through the take-home, convenience, and food-service distribution channels.  The Company sells and markets its products through an internal sales force, as well as specialized broker networks.

**Materially False and Misleading Statements Issued During the Class Period**

24.     The Class Period begins on July 17, 2014, when National Beverage filed its annual report for the fiscal quarter and year ended May 3, 2014 (the "2014 10-K").  For fiscal year 2014, National Beverage reported net income of $43.64 million, or $0.92 per diluted share, on revenue of $641.14 million, compared to net income of $46.92 million, or $1.01 per diluted share, on revenue of $662.01 million for the same period in the same period in fiscal year 2013.

25.     In the 2014 10-K, National Beverage advised investors that its Code of Ethics was available on the Company's website.  National Beverage's Code of Ethics (revised as of August 2016) states, in relevant part:

POSITIVE WORK ENVIRONMENT

The Company has an anti-harassment policy committed to providing a positive work environment for all of its employees. ***Any type of harassment, whether of a racial, sexual, ethnic, or other nature, is absolutely prohibited.*** The Company actively enforces its policy against harassment and employees are encouraged to

6

review that policy in detail. The policy applies to all conduct on the Company's premises and to all conduct off the Company's premises that affects an employee's work environment. It applies not only to relationships with and conduct toward other employees; it also applies to how employees conduct themselves with respect to representatives of suppliers, customers, and others with whom the Company has business relations. The Company considers violation of the policy to be a serious offense that will lead to discipline, up to and including discharge.

Harassment comes in many forms and may be physical, verbal, mental, or emotional. Generally, it is any conduct directed toward another person that, when viewed by a reasonable person, would or could be perceived as objectionable. Harassment includes creating a hostile work environment or permitting one to exist.

(Emphasis added.)

26. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Caporella and Bracken, stating that "[t]he information contained in the [2014 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

27. On July 26, 2015, National Beverage filed its annual report for the fiscal quarter and year ended May 2, 2015 (the "2015 10-K"). For fiscal year 2015, National Beverage reported net income of $49.31 million, or $1.05 per diluted share, on revenue of $645.83 million, compared to net income of $43.64 million, or $0.92 per diluted share, on revenue of $641.14 million for the same period in fiscal year 2014.

28. In the 2015 10-K, National Beverage advised investors that its Code of Ethics was available on the Company's website. Upon information and belief, National Beverage's Code of Ethics contained the representations regarding the Company's purported anti-harassment policy described *supra* at ¶ 25.

29. The 2015 10-K contained signed certifications pursuant to SOX by Defendants Caporella and Bracken, stating that "[t]he information contained in the [2015 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

30.     On July 14, 2016, National Beverage filed its annual report for the fiscal quarter and year ended April 30, 2016 (the "2016 10-K").  For fiscal year 2016, National Beverage reported net income of $61.2 million, or $1.31 per diluted share, on revenue of $704.79 million, compared to net income of $49.31 million, or $1.05 per diluted share, on revenue of $645.83 million for the same period in fiscal year 2015.

31.     In the 2016 10-K, National Beverage advised investors that its Code of Ethics was available on the Company's website.  Upon information and belief, National Beverage's Code of Ethics contained the representations regarding the Company's purported anti-harassment policy described *supra* at ¶ 25.

32.     The 2016 10-K contained signed certifications pursuant to SOX by Defendants Caporella and Bracken, stating that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

33.     On May 4, 2017, National Beverage issued a press release stating that it "employs methods that no other company does in this area—VPO (velocity per outlet) and VPC (velocity per capita)."  National Beverage asserted that it "utilize[s] two proprietary techniques to magnify these measure and this creates growth never before thought possible."

34.     On May 5, 2017, National Beverage issued a second press release stating that "[o]ur impressive VPO calculator . . . is flashing solid green numbers as we bring FY2017 to a close."

35.     On July 13, 2017, National Beverage filed its annual report for the fiscal quarter and year ended April 29, 2017 (the "2017 10-K").  For fiscal year 2017, National Beverage reported net income of $107.05 million, or $2.29 per diluted share, on revenue of $826.92 million, compared to net income of $61.20 million, or $1.31 per diluted share, on revenue of $704.79 million for the same period in fiscal year 2016.

8

36.     In the 2017 10-K, National Beverage advised investors that its Code of Ethics was available on the Company's website.  Upon information and belief, National Beverage's Code of Ethics contained the representations regarding the Company's purported anti-harassment policy described *supra* at ¶ 25.

37.     The 2017 10-K contained signed certifications pursuant to SOX by Defendants Caporella and Bracken, stating that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

38.     The statements referenced in ¶¶ 24-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) National Beverage's sales claims and the supposed underlying "proprietary techniques" lacked a verifiable basis; (ii) National Beverage's Chairman and CEO, Defendant Caporella, engaged in a pattern of sexual misconduct between 2014 and 2016; and (iii) as a result, National Beverage's public statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

39.     On December 8, 2017, National Beverage issued a press release announcing its financial and operating results for the period ended October 28, 2017.  Notwithstanding the Company's representations in its May 2017 press releases with respect to "creat[ing] growth never before thought possible," analyst Laurent Grandet of Credit Suisse assigned an "underperform" rating to the Company's stock.  Grandet noted that National Beverage's business was driven "almost entirely" by the success of its LaCroix sparkling water brand, the growth trajectory of which was in fact slowing.  That same day, Maxim analyst Anthony Vendetti reiterated a "sell"

recommendation for National Beverage stock, noting that its "numerous weak brands and opaque financial reporting" made its sale "highly unlikely."

40.     On this news, National Beverage's share price fell $11.91, or 10.56%, to close at $100.84 on December 8, 2017.

41.     On January 26, 2018, the SEC filed a letter addressed to Gregory P. Cook, National Beverage's Vice President, Controller and Chief Accounting Officer ("Cook"), requesting information regarding the Company's May 2017 statements with respect to its VPO and VPC metrics.  The SEC's letter stated, in part:

> You state that you "magnify these measures and this creates growth never before thought possible." You also state that you are "creating velocity per capita through proven velocity predictors." To the extent that VPO and VPC are key performance indicators used in managing your business, please include a discussion of these measures along with comparative period amounts or explain why you do not believe this disclosure is necessary. Refer to Section III.B.1 of SEC Release No. 33-8350.

42.     On February 23, 2018, National Beverage filed a letter, signed by Cook, in response to the SEC's letter of January 26, 2018.  The letter stated, in part:

> Our Chairman & CEO wrote the following in his press release dated May 4, 2017:
>
> *"VPO – VPC Dynamics*
> *National Beverage employs methods that no other company does in this area – VPO (velocity per outlet) and VPC (velocity per capita). We utilize two proprietary techniques to magnify these measures and this creates growth never before thought possible. Unique to National Beverage is creating velocity per capita through proven velocity predictors. Retailers are amazed by these methods and find before and after changes so dynamic that they demand we afford them the use of these methods as frequently as possible."*
>
> This statement characterizes the entrepreneurial spirit of National Beverage and its Chairman. The metrics that Mr. Caporella referenced are used to establish goals for certain customers, but are not utilized to manage the overall executional side of our business. Furthermore, we do not believe our comments relative to VPO/VPC dynamics require explanation as they are proprietary methods that are part of a consumer engagement program called "BrandED". Through this educational program that allows us direct contact with our consumers, we learn about frequency

of purchase, consumption, household management and other pertinent facts at various locations and time of purchase. This information is as secretive as the formulas of our beverages and should not be disclosed to our competition.

VPO and VPC therefore are not key performance indicators that would give readers a view of the Company through the "eyes of management" as that term is used in SEC Release No. 33-8350.

43.     On March 26, 2018, the SEC filed a second letter in response to the comments in Cook's letter of February 23, 2018.  The letter stated, in part:

We note your press release filed with the Form 8-K on May 5, 2017 and the references to velocity per outlet and velocity per capita. You state that you "magnify these measures and this creates growth never before thought possible." You also state that you are "creating velocity per capita through proven velocity predictors." To the extent that VPO and VPC are key performance indicators used in managing your business, please include a discussion of these measures along with comparative period amounts or explain why you do not believe this disclosure is necessary. Refer to Section III.B.1 of SEC Release No. 33-8350.

44.     Following the filing of the SEC's letter, National Beverage's share price fell $1.96, or 2.24%, to close at $85.69 on March 26, 2018.

45.     On April 25, 2018, Cook filed a letter in response to the SEC's letter of March 26, 2018, stating in part:

VPO (Velocity per Outlet) is calculated by dividing the number of units sold by a given customer during a specified time period by the number of outlets stocking the product. VPC (Velocity per Capita) is calculated by dividing the number of units sold in a given geographic area by the population of the area.

VPO metrics are used to establish goals for certain customers, identify poor performing stores, and, when combined with proprietary customer survey data, utilized to give customers better insight into their consumers. Such data is collected only for certain customers and cannot practically be used to establish goals or targets for the Company as a whole, nor can VPO data be applied to every customer. As a result, such metrics are used primarily for brand planning and execution for specific customers.

The Company uses VPC data primarily to quantify the average number of beverages by category that people consume each year in the United States. VPC highlights the opportunity for growth by comparing per capita consumption of

sparkling water in the United States to that of other developed markets. As such, VPC data is often incorporated in customer sales presentations.

Although VPO and VPC are components in marketing and evaluating performance by customer, the data underlying these metrics is proprietary, and we believe the results of this use and the performance of our brands justify the use of the descriptions included in our press releases. This data, as compiled and used by our marketing section, would not give readers a view of the Company through the "eyes of management" as that term is used in SEC Release No. 33-8350.

46.     On May 14, 2018, post-market, the SEC filed a third letter to Cook, stating that the

agency had completed its review of his filing.

47.     On June 26, 2018, post-market, the *Wall Street Journal* published an article entitled

"The SEC Has Had Its Own Questions About LaCroix".  The article reported, in part:

LaCroix maker National Beverage Corp. FIZZ 2.04% is known for issuing colorful news releases peppered with exclamation points, outsize boasts and attacks on critics.

Two of those releases recently caught the attention of the Securities and Exchange Commission, which in January asked the flavored seltzer company to clarify what its billionaire chairman and chief executive, Nick Caporella, meant when he wrote that the company had "magnified" two proprietary sales metrics to create "growth never before thought possible."

In the first of the two releases, dated May 4, 2017, Mr. Caporella wrote: "National Beverage employs methods that no other company does in this area – VPO (velocity per outlet) and VPC (velocity per capita)… Unique to National Beverage is creating velocity per capita through proven velocity predictors. Retailers are amazed by these methods."

The following day, a release described a VPO calculator "flashing solid green numbers as we bring FY2017 to close."

The SEC asked the Fort Lauderdale, Fla.-based company to provide "a discussion of these measures along with comparative amounts or explain why you do not believe this disclosure is necessary," according to securities filings.

***In correspondence with the agency disclosed in those filings, National Beverage declined to provide the requested figures.***

"This information is as secretive as the formulas of our beverages and should not be disclosed to our competition," Gregory Cook, the company's controller, wrote

in a response to the SEC. The metrics are used to set goals for certain customers and not for the company as a whole, he added. The agency said in May that it had completed its review of the matter.

(Emphasis added.)

48.     On this news, National Beverage's share price fell $9.75, or 8.87%, to close at $100.19 on June 27, 2018.

49.     Then, on July 3, 2018, the *Wall Street Journal* published an article entitled "Billionaire Behind LaCroix Accused of Improper Touching by Two Pilots." The article reported, in part:

Two pilots have filed lawsuits alleging sexual harassment by the billionaire behind LaCroix sparkling water, claiming 82-year-old Nick A. Caporella inappropriately touched them on multiple trips while they were flying with him in the cockpit of his business jet.

The allegations by the former employees, both men, were made in lawsuits filed in the past two years in Florida and name both the chief executive and National Beverage Corp. as defendants. Mr. Caporella is the chairman, chief executive and controlling shareholder of National Beverage, which has a market value of $5 billion, thanks to surging LaCroix sales.

Mr. Caporella, a rare CEO who also pilots the corporate jet, and the company have denied the allegations in court documents. ***The suits claim the unwanted touching occurred on more than 30 trips from 2014 to 2016.***

* * *

One lawsuit was filed by pilot Terence Huenefeld and his wife. Mr. Huenefeld, who spent about five months working for Mr. Caporella, accused the CEO of unwanted touching on 18 flights between March and July 2016, according to court documents.

The lawsuit alleged Mr. Caporella engaged in "repeated unjustified, unwarranted and uninvited grabbing, rubbing and groping of Terry's leg in a sexual manner, reaching up towards Terry's sexual organs."

* * *

The second pilot, Vincent Citrullo, alleged in his lawsuit ***a similar pattern of behavior*** during more than a year flying alongside Mr. Caporella. The lawsuit claims that on 14 flights from March 2014 to July 2015, Mr. Caporella engaged in

13

unwanted touching, including grabbing Mr. Citrullo under his armpit, under his thigh and moving his right hand up Mr. Citrullo's left leg towards his genitals.

Reached by phone Tuesday, *Mr. Citrullo said he stands by his allegations "100%. It was definitely inappropriate."*

50.     On this news, National Beverage's share price fell $2.90, or 2.64%, over the following two trading days, closing at $107.04 on July 6, 2018.

51.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired National Beverage securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, National Beverage securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by National Beverage or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of National Beverage;

- whether the Individual Defendants caused National Beverage to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of National Beverage securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

58.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- National Beverage  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold National Beverage securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of National Beverage securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire National Beverage securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for National Beverage securities.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about National Beverage's finances and business prospects.

65.     By virtue of their positions at National Beverage , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of National Beverage, the Individual Defendants had knowledge of the details of National Beverage's internal affairs.

67.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of National Beverage.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to National Beverage's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of National Beverage securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning National Beverage's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the

Class purchased or otherwise acquired National Beverage securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

68.     During the Class Period, National Beverage securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of National Beverage securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of National Beverage securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of National Beverage securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of National Beverage, and conducted and participated, directly and indirectly, in the conduct of National Beverage's business affairs.  Because of their senior positions, they knew the adverse non-public information about National Beverage's misstatement of income and expenses and false financial statements.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to National Beverage's financial condition and results of operations, and to correct promptly any public statements issued by National Beverage which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which National Beverage disseminated in the marketplace during the Class Period concerning National Beverage's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause National Beverage to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of National Beverage within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of National Beverage securities.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of National Beverage.  By reason of their senior management positions and/or being directors of National Beverage, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, National Beverage to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of National Beverage and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by National Beverage.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED:  July 17, 2018                    Respectfully submitted,

                                         Hedin Hall llp

                                         By: /s/ Frank S. Hedin
                                                 Frank S. Hedin

                                         FRANK S. HEDIN (FBN 109698)
                                         DAVID W. HALL*
                                         1395 Brickell Ave, Suite 900
                                         Miami, Florida 33131
                                         Telephone:      (305) 357-2107
                                         Facsimile:      (305) 200-8801
                                         E-mail: fhedin@hedinhall.com
                                         E-mail: dhall@hedinhall.com

                                         **POMERANTZ LLP**
                                         Jeremy A. Lieberman*
                                         J. Alexander Hood II*
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone:  (212) 661-1100
                                         Facsimile:  (212) 661-8665
                                         Email:  jalieberman@pomlaw.com
                                                 ahood@pomlaw.com

                                         **POMERANTZ LLP**
                                         Patrick V. Dahlstrom*
                                         10 South La Salle Street, Suite 3505
                                         Chicago, Illinois 60603
                                         Telephone:  (312) 377-1181
                                         Facsimile:   (312) 377-1184
                                         Email:  pdahlstrom@pomlaw.com

                                         **HOLZER & HOLZER, LLC**
                                         Corey D. Holzer*
                                         1200 Ashwood Parkway, Suite 410
                                         Atlanta, GA  30338
                                         Telephone:  (770) 392-0090
                                         Facsimile:  (770) 392-0029
                                         Email: cholzer@holzerlaw.com

                                         **\*** *Pro Hac Vice* Application Forthcoming

                                         ***Attorneys for Plaintiff***

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows **- List additional transactions on Schedule A, if necessary**:

Purchases:

Ticker of Company (see attached)

FIZZ



Sales:

Ticker of Company

FIZZ

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _13_ day of _JULY_ , 2018 in _AGOURA_ , _CA_ .

City                    State

(Signature) X _Thomas W Luczak_

(Print Name) _THOMAS W. LUCZAK_

**National Beverage Corp (FIZZ)**                                        **Luczak, Thomas W.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 5/31/2017 | Purchase | 9,598 | $94.8800 |
| 5/31/2017 | Purchase | 100 | $94.8700 |
| 5/31/2017 | Purchase | 100 | $94.8500 |
| 5/31/2017 | Purchase | 200 | $94.8300 |
| 5/31/2017 | Purchase | 2 | $94.7800 |
| 7/13/2017 | Purchase | 10,000 | $96.8800 |
| 8/2/2017 | Purchase | 5,000 | $103.2800 |
| 8/17/2017 | Purchase | 10,000 | $110.8800 |
| 8/29/2017 | Purchase | 10,000 | $113.8800 |
| 9/8/2017 | Purchase | 10,000 | $115.1800 |
| 9/12/2017 | Purchase | 5,000 | $123.2800 |
| 9/12/2017 | Purchase | 6 | $121.8800 |
| 9/13/2017 | Purchase | 4,994 | $121.8800 |
| 7/7/2017 | Sale | 10,000 | $95.8800 |
| 8/3/2017 | Sale | 5,000 | $105.0000 |
| 8/3/2017 | Sale | 5,000 | $109.9900 |
| 8/3/2017 | Sale | 5,000 | $110.1000 |
| 12/28/2017 | Sale | 5,000 | $97.3500 |
| 12/28/2017 | Sale | 5,000 | $97.4500 |
| 12/28/2017 | Sale | 5,000 | $97.5000 |
| 12/28/2017 | Sale | 20,000 | $96.6500 |
| 12/28/2017 | Sale | 5,000 | $96.6000 |