UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-61631-KMM

THOMAS W. LUCZAK,
Individually and on Behalf of
All Others Similarly Situated,

    Plaintiff,

v.

NATIONAL BEVERAGE CORP. *et al.*,

    Defendants.
_____/

**ORDER ON MOTION FOR CLASS CERTIFICATION**

THIS CAUSE came before the Court upon Plaintiff Thomas Luczak's ("Plaintiff") Motion for Class Certification and Appointment of Class Representative and Class Counsel. ("Mot.") (ECF No. 63). Defendants National Beverage Corp. ("NBC" or "National Beverage"), Nick A. Caporella ("Caporella"), and George R. Bracken ("Bracken") (collectively, "Defendants") filed a response, ("Resp.") (ECF No. 79-1), and Plaintiff replied, ("Reply") (ECF No. 82). The Motion is now ripe for review.

**I.    BACKGROUND**[1]

National Beverage is a publicly owned, family-controlled, and Fort Lauderdale-based company founded by Caporella that "develops, produces, markets, and sells a portfolio of flavored beverage products," including sparkling waters LaCroix and Shasta. Am. Compl. ¶¶ 2–3, 25, 194. Caporella, the CEO and Chairman of National Beverage, controls 73.5% of the company's

---

[1] The facts herein are taken from Plaintiff's Consolidated Amended Class Action Complaint, ("Am. Compl.") (ECF No. 25), and a review of the corresponding record citations and exhibits.

common stock. *Id.* ¶¶ 3, 25. Bracken is National Beverage's Executive Vice President of Finance. *Id.* ¶ 26. Caporella and Bracken are both authorized to (1) control the contents of National Beverage's Securities Exchange Commission ("SEC") filings, press releases, and other market communications; (2) prevent any communication from being issued; and (3) correct any misstatement. *Id.* ¶ 28.

Plaintiff, individually and on behalf of all others similarly situated, brought the instant securities class action against Defendants pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. *Id.* ¶ 1. Plaintiff initially alleged that during the designated class period of July 17, 2014 through October 30, 2018 (the "Class Period"), he acquired National Beverage stock at artificially inflated prices due to repeated material misrepresentations and omissions in National Beverage's publicly issued statements, and that these misrepresentations and omissions caused Plaintiff and other class members "significant losses and damages." *Id.* ¶¶ 1, 18, 23. Specifically, Plaintiff identified four categories of statements or omissions that eventually led to a "precipitous decline" in the value of National Beverage's securities: (1) misleading statements regarding internal sales metrics—velocity per outlet ("VPO") and velocity per capita ("VPC") (the "VPO/VPC claim"); (2) Defendants' failure to disclose Caporella's alleged sexual misconduct between 2014 and 2016 (the "sexual harassment claim"); (3) misleading claims about LaCroix's ingredients (the "all-natural claim"); and (4) misleading statements and omissions about Defendants' sales and profits attributable to LaCroix, which allegedly violated Generally Accepted Accounting Principles ("GAAP") (the "GAAP claim"). *See generally id.*

Defendants moved to dismiss Plaintiff's Amended Complaint on December 2, 2018. (ECF No. 26). The Court granted Defendants' motion and dismissed the Amended Complaint with prejudice. (ECF No. 38). Plaintiff appealed the Court's dismissal of two of his claims—the

VPO/VPC claim and the sexual harassment claim—but notably *not* his GAAP claim. (ECF No. 41). On June 2, 2020, the Eleventh Circuit reinstated only Plaintiff's VPO/VPC claim, finding that a March 23, 2018 letter from the SEC and a June 26, 2018 *Wall Street Journal* article constituted a series of partial disclosures sufficient to viably plead "loss causation for the VPO/VPC claim through a 'corrective disclosure' theory[.]" *See* ("Mandate") (ECF No. 44) at 11–16.

Now, Plaintiff seeks certification of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Relevantly, Plaintiff alleges that NBC's press releases on May 4, 2017, May 5, 2017, and June 2, 2017 were false and misleading. *See* Am. Compl. ¶¶ 80–82, 89–92. Plaintiff additionally alleges that the March 23, 2018 letter and the June 26, 2018 article were corrective disclosures that resulted in a decreased share price and an injury to investors who bought shares during the Class Period. *Id.* ¶¶ 135, 139. In his Motion, Plaintiff defines the Class as:

> [A]ll persons or entities who purchased or otherwise acquired common shares of National Beverage Corp. ("National Beverage" or the "Company") between May 4, 2017 and June 26, 2018, both dates inclusive (the "Class Period").

Mot. at 8. Defendants challenge class certification on the bases that Plaintiff: (1) lacks standing, (2) fails to satisfy the requirements of Federal Rule of Civil Procedure 23(a), and (3) cannot meet his burden of showing that common issues predominate amongst the proposed Class members as required by Rule 23(b)(3). *See generally* Resp.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the certification of class actions. Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). In addition to Rule 23(a), the party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotation marks omitted)). A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).

**III.   DISCUSSION**

    **A.   Class Definition and Standing**

    1. <u>Class Definition</u>

"Before analyzing the Rule 23(a) requirements . . . a court must determine whether the class definition is adequate." *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006). A class should be accurately defined; certification should be denied where the class definition is "overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003). Here, Plaintiff seeks recovery for:

> [A]ll persons or entities who purchased or otherwise acquired common shares of National Beverage Corp. ("National Beverage" or the "Company") between May 4, 2017 and June 26, 2018, both dates inclusive (the "Class Period").[2]

Mot. at 8.

The Court finds that, with slight modifications, the definition is concise and specific, and that such a group is readily identifiable. In particular, the Proposed Class should only include those individuals and entities who actually *held* NBC stock at the time of the series of alleged corrective disclosures on March 23, 2018 and June 26, 2018. Also, the Class should be limited to those who actually purchased NBC shares during the Class Period. *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880, 2016 WL 4006661, at *5 (S.D. Fla. Mar. 16, 2016) ("A plaintiff claiming a violation of a private securities fraud under Rule 10b–5 must prove, *inter alia,* reliance on the misrepresentation. It plainly follows then that a person who did not resolve to *purchase* a security cannot claim reliance on a purported misrepresentation.") (citation omitted and emphasis included in original).

Thus, the Court will use the following definition in assessing the propriety of class certification:

> All persons or entities who purchased common shares of National Beverage Corp. ("National Beverage" or the "Company") between May 4, 2017 and June 26, 2018, both dates inclusive (the "Class Period") and held those shares on or after March 23, 2018, and excluding Defendants, the present and former officers and directors of National Beverage and any subsidiary thereof, members of such excluded persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any excluded person has or had a controlling interest.

---

[2] Additionally, Plaintiff's class definition excludes "Defendants, the present and former officers and directors of National Beverage and any subsidiary thereof, members of such excluded persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any excluded person has or had a controlling interest." *Id.* at 8 n.1.

2. <u>Standing</u>

"It is well-settled in the Eleventh Circuit that prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 694 (S.D. Fla. 2017); *see also Gardner v. Mutz*, 962 F.3d 1329, 1337 (11th Cir. 2020) ("[T]he plaintiff who lacks standing never had a 'Case' to begin with."). In order to establish standing, a plaintiff must show (1) an "injury-in-fact," (2) a causal connection between the alleged injury and the defendant's challenged action, and (3) that "the injury will be redressed by a favorable decision." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (holding that a class action plaintiff must show that he or she has "(1) suffered an injury in fact, that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"). Here, Plaintiff has not adequately demonstrated that he has standing to seek relief in this case.

Defendants argue that Plaintiff has not suffered an injury-in-fact because "Plaintiff sold all of his shares in the Company prior to the alleged corrective disclosures relating to the single remaining [VPO/VPC] claim[.]" Resp. at 10. Specifically, Defendants contend that the record indicates Plaintiff sold his NBC shares on December 28, 2017 and did not purchase additional shares until November 28, 2018. *See id.* at 10–11. Plaintiff argues in his Reply that he "has always alleged that the truth about National Beverage's VPO/VPC statements started to come out on December 8, 2017," and that Defendants are incorrect to suggest otherwise. Reply at 13. The Court finds Plaintiff's argument unpersuasive and bordering on misleading.

Defendants are correct that Plaintiff—for the first time in his Motion—attempts to claim that December 8, 2017 analyst reports were related to NBC's VPO/VPC statements and not its alleged GAAP deficiencies. Resp. at 11. Plaintiff's earlier filings confirm as much. First, in the Amended Complaint, Plaintiff alleges that

> [o]n December 8, 2017, the market began to learn of the impact that the Company's non-transparent financials would have on the stock price. Analysts issued sell ratings despite positive financials, citing poor corporate governance, lack of transparency and "opaque" financials. For example, **notwithstanding the Company's representations in its May 2017 press releases with respect to "creat[ing] growth never before thought possible,"** analyst Laurent Grandet of Credit Suisse assigned an "underperform" rating to the Company's stock.

Am. Compl. ¶ 122 (emphasis added). This allegation suggests that the analyst reports did not call into question the veracity of NBC's VPO/VPC statements, but rather that the negative ratings turned on questions of NBC's GAAP compliance, corporate governance, and other issues related to claims which have since been dismissed by this Court, and affirmed by the Eleventh Circuit.

Next, Plaintiff affirmed the Court's understanding of Plaintiff's allegations on numerous occasions in his response to Defendants' Motion to Dismiss by repeatedly stating in his filings that it was not until March 26, 2018, upon the alleged leak of the SEC letter, that the market came to understand that there was a potential issue with VPO and VPC. *See* ("Pl.'s Resp. to Mot. to Dismiss") (ECF No. 32) at 9 ("The [Complaint] alleges that the market did not learn that these metrics were commonly utilized in the retail industry until **after** NBC revealed how it really uses VPO and VPC formulas in response to the SEC's demand that NBC disclose those facts."); *id.* at 12 (arguing that "[t]hrough its letter response to the SEC, NBC finally revealed that VPO and VPC were nothing more than part of a marketing and sales pitch" and that "the price of NBC stock declined upon this disclosure, providing additional evidence of the materiality of these earlier statements to investors and the market"); *id.* at 23–24 (maintaining that "[o]n March 26, 2018,

when the market learned that VPO and VPC metrics were not key performance indicators nor used to manage the business (via the March 23, 2018 SEC letter), the stock incurred a statistically significant drop" and "[t]he June 26, 2018 *Wall Street Journal* ("WSJ") article provided the market with a full realization that Defendants' claims about the VPO and VPC metrics were false and misleading").

Thus, Plaintiff did not allege—and the Court does not find—the December 8, 2017 analyst reports to be partial corrective disclosures related to Plaintiff's VPO/VPC claim.[3] *See Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (holding that it is improper for a district court to accept the allegations in a plaintiff's complaint as true at the class certification stage and that if a question of fact or law is relevant to the determination of whether the requirements of Rule 23(a) have been satisfied, "then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor"); *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 435 (M.D. Fla. 2000) ("[T]he Court is not bound to accept as true allegations in the complaint that the Rule 23 class certification requirements have been met.").

As a result, Plaintiff did not suffer an injury-in-fact because he did not own shares of NBC when the alleged corrective disclosures were made in March and June of 2018—when it was

---

[3] Further, the analyst reports in question do not even constitute corrective disclosures in the first place. *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) ("If every [analyst's] opinion based on already-public information could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue under § 10(b) using an analyst's negative analysis . . . . That cannot be—nor is it—the law."). While a disclosure "need not precisely mirror the earlier misrepresentation" in order to be considered corrective, "it must at least relate back to the misrepresentation and not to some other negative information about the company." *Id.* at 1197. Defendants' expert, Dr. Vinita Juneja ("Dr. Juneja"), reviewed 320 analyst reports published between April 29, 2016 and September 10, 2019 and found that VPO and VPC were only mentioned in five (5) reports. ("Dr. Juneja's Report"), Ex. A (ECF No. 78-2) ¶¶ 41, 43. All five of these reports were published on or after June 26, 2018. Plaintiff cites to no evidence in the record that any of the December 8, 2017 analyst reports relate back to VPO and VPC and not "other negative information about" NBC. *Meyer*, 710 F.3d at 1197.

revealed to the market that there were potential issues with the VPO and VPC metrics—which is fatal to Plaintiff's only remaining claim. *See* Ex. B (ECF No. 78-3) at 5–7. Consequently, Plaintiff cannot show that he suffered a concrete and actual injury due to Defendants' statements regarding VPO and VPC, or the subsequent causal connection necessary to establish standing. *See Friends of the Earth, Inc*, 528 U.S. at 180. And, an inflated purchase price alone is insufficient to plead loss causation on a § 10(b) claim. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *see also Meyer*, 710 F.3d at 1196 ("By ensuring that only losses actually attributable to a given misrepresentation are cognizable, the loss causation requirement ensures that the federal securities laws do not 'becom[e] a system of investor insurance that reimburses investors for any decline in the value of their investments.'"). Accordingly, the Court finds that Plaintiff lacks individual standing to bring this claim. Even so, the Court will address the merits of class certification.

### B. Rule 23(a) Requirements

1. Numerosity

Rule 23 requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, a class of less than 21 members is inadequate, and a class of more than 40 members is adequate. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also* BRUCE A. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2021) ("[A] class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

In his Motion, Plaintiff represents that there are "approximately 28,000 geographically dispersed Class Members." *See* Mot. at 11. Additionally, Plaintiff highlights his expert's declaration which states that during the Class Period (1) 1.55 million NBC shares were traded weekly, (2) over 46.57 million shares were outstanding, and (3) there were 355 large institutional investors. *See id.* (citing ("Coffman Decl.") (ECF No. 63-1) at 15, 34–35, 37). Defendants do not dispute Plaintiff's argument that Rule 23(a)(1) is satisfied in their Response. *See generally* Resp. This demonstrates an adequate number of members in the Putative Class. "[A] plaintiff need not show a precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Moreover, joinder of a Putative Class this size is impracticable. Accordingly, Plaintiff has demonstrated that the Putative Class is sufficiently numerous.

2. Commonality

Commonality demands that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is a "relatively light burden" that "'does not require that all the questions of law and fact raised by the dispute be common' . . . or that the common questions of law or fact 'predominate' over individualized issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (quoting *Cox*, 784 F.2d at 1557). Rather, "at least one issue affecting all or a significant number of proposed class members" is sufficient. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Allegations of a common course of conduct by a defendant affecting all class members will satisfy the commonality requirement. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685–86 (S.D. Fla. 2004); *Fabricant*, 202 F.R.D. at 313.

Common issues of fact and law exist here. Specifically, the crux of this case is whether the partial corrective disclosures on March 23, 2018 and June 26 of 2018 "revealed to the market the pertinent truth that was previously concealed or obscured by the company's fraud." Mandate

10

at 15 (citing *Luczak v. Nat'l Beverage Corp.*, 400 F. Supp. 3d 1318, 1330 (S.D. Fla. 2019)). The Class is limited to those persons or entities who purchased and owned NBC shares throughout the Class Period. Further, Plaintiff avers, and Defendants do not dispute, that the legal claims asserted by the Class members are common, as is the evidence that will be employed to prove them. Mot. at 11–12. For these reasons, the Court finds that Plaintiff satisfies the commonality requirement.

    3.  <u>Typicality</u>

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical . . . . [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d at 1275 (citations and quotation marks omitted). Commonality and typicality are related, but "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Id.* (citations and quotation marks omitted). Like commonality, the test for typicality is not a demanding one. *See In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

In his Motion, Plaintiff contends that his claims are typical of the Proposed Class because he and "the absent Class members were all similarly injured by Defendants' common course of conduct—misrepresentations and omissions regarding National Beverage's Velocity Metrics—and all assert violations of the same statutes based upon the same nucleus of facts." Mot. at 12. Defendants argue in opposition that Plaintiff does not satisfy the typicality requirement of Rule 23(a) because he (1) does not have standing to represent the Proposed Class, and (2) is subject

11

to unique defenses which "threaten to become the focus of the litigation."[4]  Resp. at 12–14. Plaintiff asserts in reply that (1) "[a]ny assertion that Plaintiff lacks standing ignores the December 8, 2017 partial disclosure discussed in the Complaint and the Motion"; (2) Defendants' arguments regarding Plaintiff's unique defenses only confirm his typicality; and (3) "to the extent his experience or sophistication is relevant to a typicality analysis, the evidence is that Plaintiff is a typical investor who relied on the market price to purchase his shares of National Beverage." Reply at 7–8.

Here, the named Plaintiff's claim is atypical of those of the rest of the Putative Class because he lacks individual standing. *See Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1347 (11th Cir. 2001) ("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 38–41 (2d Cir. 2009) (concluding that the named plaintiff—an in-and-out trader—did not establish loss causation and thus could not serve as class representative due to his atypicality and inadequacy under Rule 23(a)).  This finding alone warrants denial of Plaintiff's Motion.

Even if Plaintiff did have standing to bring this claim, the Court finds that he is not typical of the Proposed Class because (1) his factual position differs from the other members of the Class and (2) he is an atypical investor subject to unique defenses.  *Cf. Murray v. Auslander*, 244 F.3d

---

[4] Defendants additionally argue that Plaintiff is issue precluded from "recasting allegations from dismissed claims," specifically referring to Plaintiff's newfound argument that analyst reports from December 8, 2017 constituted corrective disclosures. *Id.* at 12 n.3.  Plaintiff maintains that Defendants' issue preclusion argument fails because there is no final judgment precluding him from pursuing December 8, 2017 as a disclosure. *Id.* at 7.  Because the Court finds that Plaintiff did not actually or sufficiently allege that the December 8, 2017 analyst reports related to his VPC/VPO claim, *supra* at 7, he lacks standing and the Court need not rule on whether the allegation is issue precluded.

12

807, 811 (11th Cir. 2001) ("The typicality requirement may be satisfied despite substantial factual differences, however, when there is a 'strong similarity of legal theories.'"); *see Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (holding that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation"); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Typicality . . . does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical *unless the factual position of the representative markedly differs from that of other members of the class*.") (emphasis added).

In the instant case, not only does Plaintiff lack standing to bring the VPO/VPC claim, his factual situation differs markedly from the Putative Class members and he would be subject to unique defenses.

First, as mentioned previously, Plaintiff sold all his NBC shares on December 28, 2017, months before the series of partial corrective disclosures at issue that occurred on March 23, 2018 and June 26, 2018. *See* Ex. B at 5–7. Now, Plaintiff contends that he "has always alleged that the truth about National Beverage's VPO/VPC statements started to come out on December 8, 2017."[5] Reply at 13. Assuming *arguendo* that is the case, the viability of Plaintiff's claim turns entirely on whether he can adduce evidence of loss causation stemming from the December 2017 disclosure, while the other Class members' claims will rely on evidence of loss causation attributable to the March and June 2018 partial disclosures, both of which had a direct bearing on the validity of the VPO and VPC metrics, to establish their claims. Therefore, the Court finds that

---

[5] Plaintiff provides no evidence or citation to the record demonstrating that "the market began to understand the inconsistencies" in NBC's growth velocity and its prior representations regarding VPO and VPC on December 8, 2017. *See* Mot. at 9.

13

the difference in Plaintiff's factual position makes him atypical since Plaintiff and the Putative Class will be required to prove that their losses were caused by distinct and separate events, potentially fomenting a disunified class and placing the interests of the Class in significant jeopardy. *See In re Terazosin Hydrochloride*, 220 F.R.D. at 686 ("[A]ny atypicality or conflict between the named Plaintiffs' claims and those of the Class 'must be clear and must be such that the interests of the class are placed in significant jeopardy.'") (quoting *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996)). The timing of the applicable disclosures in relation to the date of Plaintiff's sale of NBC securities, alone, operates to render his claim atypical of the Putative Class.

Next, Defendants argue that "Mr. Luczak's history as an investor, his trading patterns in National Beverage stock, and his credibility raise unique defenses that present 'a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [him].'" Resp. at 13 (citing *Baffa*, 222 F.3d at 60). Plaintiff counters that differences in investment experience or sophistication between other Class members and himself is irrelevant. Reply at 7. However, it is not Plaintiff's sophistication that concerns the Court—though it is apparent from the record that Plaintiff is not a typical, unsophisticated investor as he argues. *Id.* at 8.

Indeed, Plaintiff's deposition transcript is rife with inconsistencies and incredible assertions related to his investment behaviors that gives the Court pause and further distinguishes him from the other Class members. Specifically, Plaintiff testified that:

(1) he does not consider himself a sophisticated investor, even though he has traded individual stocks on margin for more than two decades ("Luczak Dep. Tr.") (ECF No. 80-1) at 51:10–23, 52:10–53:5, 56:14–21;

(2) he does not consider himself a long-term investor and does not recall any instance in which he held a stock for more than one year. *Id.* at 60:14–61:22;

(3) he does not invest in mutual funds or bonds and invests solely in stocks "[b]ecause it's much easier to exit the investment if things do not look favorable." *Id.* at 63:9–20, 64:19–23;

(4) he does not have—nor has he ever had—an investment advisor, instead making all investment decisions by himself. *Id.* at 76:2–14;

(5) he does not—and did not—look at or read SEC filings of National Beverage or any other company in which he has invested.[6] *Id.* at 60:1–2, 125:17–126:16;

(6) he buys and sells hundreds of thousands of dollars' worth, and occasionally more than one million dollars' worth, of stock at once—holding that stock for periods as short as a single day, and does not recall why he chose to buy and sell so quickly, or whether he made or lost money on such transactions. *Id.* at. 82:19–84:21 ("Q. [Y]ou bought [and] sold 10,000 shares, you turned around and bought 10,000 shares again, and then you sold 10,000 shares all within a week. . . . That doesn't stick out in your mind? A. No, it does not. Q. Is that something you did frequently? A. It wouldn't surprise me."), 131:19–138:10; *see also* Ex. B at 5–7;

(7) he does not calculate his potential gains or losses before he executes a trade, Luczak Dep. Tr. at 86:21–87:15, nor does he recall the specific source of his losses, *see id.* at 97:1–117:5, or any steps he took to reduce those losses from one year to the next. *Id.* at 102:14–24, 109:7–110:1, 116:19–117:6; *see also id.* at 99:22–100:7, 109:3-6, 115:1–117:6

---

[6] Plaintiff then contradicts himself by stating that he *does* read annual reports if they are available on a company's website. *Id.* 71:7–18.

(testifying to his 2016, 2017, and 2018 tax returns, which reflect annual short-term capital losses ranging from $420,000 to more than $5.2 million);

(8) he does not recall if his and his spouse's annual income—individually or jointly—exceed the $200,000 and $300,000 thresholds of accredited investors. *Id.* at 53:13–56:8; and

(9) his investment strategy is to "look at situations with growth potential," *see id.* at 58:20–59:2, but that he did not track dividends from his investments "because it's kind of a small number compared to growth in the individual stock."[7]  *Id.* at 66:6–16, 111:13–113:16.

Plaintiff's haphazard and highly unusual trading practices—which are anything but typical—give rise to unique defenses that would be raised solely against Plaintiff.  Further, Plaintiff's VPO/VPC claim is entirely and uniquely reliant on the supposed December 8, 2017 corrective disclosure, in a manner that would also generate distinct defenses relating to that specific disclosure.  For these reasons, the Court concludes that "the time and attention [Plaintiff] would be required to devote to the loss causation issue (not [only] to rebut a defense, but to prove [his] case) would distract it from the claims of the rest of the class." *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005).

Moreover, despite his arguments to the contrary attempting to distinguish himself from the plaintiff in *Steginsky v. Xcelera, Inc.*, No. 3:12-CV-188 SRU, 2015 WL 1036985, at *6 (D. Conn. Mar. 10, 2015), *aff'd*, 658 F. App'x 5 (2d Cir. 2016), Plaintiff—like the *Xcelera* plaintiff—*also* purchased shares after the alleged corrective disclosures were made.  The Court will not opine on

---

[7] Between 2016 and 2018, Plaintiff's total dividends were hundreds of thousands of dollars per year. *Id.* at 95:22–96:3, 103:5–18, 111:1–18, 112:7–14, 109:7–110:1.

16

Plaintiff's motives for repurchasing NBC shares in November of 2018, however, the record here is not so distinguishable from *Xcelera* on this point as to provide support for his arguments.

For the reasons above, the Court finds that Plaintiff has not met his burden of establishing he is typical of the Class as required by Rule 23(a)(3).

   4. Adequacy

Finally, Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted). "[Although] the elements of typicality and adequacy trigger distinct inquiries, the typicality and adequacy analyses under Rule 23(a) tend to merge. *Thorpe*, 2016 WL 4006661, at *7.

In the present case, the alleged conduct toward the named Plaintiff differs from the conduct faced by other Putative Class members.  Accordingly, the Court concludes that Plaintiff is not an adequate representative of the Proposed Class because he did not suffer the same injury-in-fact (or any actionable injury for that matter) as the other Class members—indeed, he lacks standing in the first instance.  *See Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, No. 8:10-cv-2008-T-33TGW, 2012 WL 4356850, at *4 (M.D. Fla. Sept. 24, 2012), *aff'd*, 763 F.3d 1280 (11th Cir. 2014) ("[The named plaintiff] cannot adequately represent the class as its representative if [he] lacks standing."); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 639 (S.D. Fla. 2008) ("Nonetheless, the undersigned finds that the adequacy requirement is not satisfied here with respect to the FDUTPA claim because the plaintiff does not have standing to

17

assert this claim."). Therefore, Plaintiff has not demonstrated that he can adequately represent the Putative Class as required by Rule 23(a)(4).

Again, Rule 23 is more than a pleading standard; it requires the party seeking class certification to affirmatively demonstrate compliance with the Rule and requires the Court to engage in a "rigorous analysis" of whether the Rule 23 prerequisites have been satisfied. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Because Plaintiff does not have standing—and thus cannot meet his burden of showing that he is a typical and adequate Class Representative—and because Plaintiff is the only named plaintiff, class certification must be denied.[8] *See Stephens v. Walmart Stores, Inc.*, No. 0:16-CV-62723-KMM, 2017 WL 7792569, at *4 (S.D. Fla. Oct. 23, 2017) ("'For a district court to certify a class action, the named plaintiffs must have standing.' Because [Plaintiff] is the only named plaintiff, the Court's conclusion that [he] lacks standing is fatal to his Motion for Class Certification.") (internal citation omitted).

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUGED that Plaintiff's Motion for Class Certification (ECF No. 63) is DENIED. Plaintiff's Consolidated Amended Class Action Complaint (ECF No. 25) is DISMISSED WITH PREJUDICE. The Clerk of Court is INSTRUCTED to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of July, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

---

[8] For these reasons, the Court does not reach the Parties' arguments regarding Federal Rule of Civil Procedure 23(b)(3).